**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MERRICK LITTLE, | : | |
| Plaintiff, | : | **OPINION** |
| v. | : | Civ. No. 09-5183 (WHW) |
| JOHN DOE and RICHARD ROE, fictitious names representing individuals having actual identity unknown to plaintiff at this time, DORIS ANSOMAH, HILTON HOSPITALITY INC., SURREY HOTEL MANAGEMENT, and/or ABC CORP., a fictitious name having actual identity unknown to plaintiff at this time, doing business as HILTON NEWARK PENN STATION HOTEL, | : | |
| Defendants. | : | |

**Walls, Senior District Judge**

Defendant Surrey Hotel Management, LLC moves for summary judgment on plaintiff Merrick Little's complaint which alleges that he was subject to hostile work environment sexual harassment and retaliatory discharge in violation of the New Jersey Law Against Discrimination. Plaintiff has not filed an opposition to this motion. The Court decides this matter based on the information and papers before it. Surrey's motion is granted because it acted expeditiously and effectively to remedy the alleged harassment and because Little cannot show a connection between his report of harassment and his subsequent termination.

1

**NOT FOR PUBLICATION**

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Merrick Little ("Little"), was employed as a kitchen worker at the Hilton Newark Penn Station Hotel ("the hotel") in Newark, New Jersey beginning in 2001 through his termination in 2008. The defendant, Surrey Hotel Management, LLC ("Surrey"), assumed management of the hotel in 2006 and became Little's employer. Def.'s Statement of Facts ¶¶ 1-2.

On Monday, September 24, 2007, Little complained to the hotel's human resources department that a coworker, Doris Ansomah ("Ansomah"), directed inappropriate sexual comments towards him and later jabbed her index finger in his face and twisted his ear. Patino Cert. Ex. B. Following an investigation, the hotel terminated Ansomah on October 2, 2007 in accordance with the hotel's anti-discrimination and harassment policy. Patino Cert. Ex. C.

Beginning in mid-February 2008, several employees complained to the hotel's human resources department that Little was harassing, intimidating and threatening them. Ansomah's husband, Michael Stanziale, who also worked at the hotel, reported that Little approached him and in a "loud, hostile tone of voice," said, "you think I'm stupid. This case is not over. I'm still going to pursue it in the courts."[1] Patino Cert. Ex. G. A security officer at the hotel reported that Little stated in "a very angry voice," "I have heard of crooked cops, but not crooked security officers." And then stated, "I will beat anybody, I don't care." Patino Cert. Ex. E. The director of hotel security, Sam Armah, wrote to the director of human resources stating that Little exclaimed, "Gentlemen, it's not over yet!, there's more lawsuit [sic] coming, it's not over yet!" And that Little commented that "I am going to beat up some nigger!" Patino Cert. Ex. F.

---

[1] Little was apparently referring to a criminal harassment complaint he brought against Ansomah for the September incident. The complaint was eventually dismissed. Patino Cert. Ex. G; Def.'s Statement of Facts ¶ 13.

**NOT FOR PUBLICATION**

In light of these complaints, a human resources representative summoned Little to a meeting which included the representative, Little's immediate supervisor, and Little's union representative. At the meeting, which took place on February 21, 2008, the human resources representative told Little about the complaints and informed him that he was being suspended from work until human resources could complete an investigation. In response, Little stormed out of the office into the hallway, where Armah and a Newark police officer were waiting. Little yelled, "I will see you in court, this is not over yet." Patino Cert. Ex. I. Later that day, Little called human resources representative Dina Tavares and left a voicemail message stating that he was "not coming back" and:

> You gave me a party, now I'm going to return the party. They better have every motherfucking police officer at that exit because you know what, when they come, they comin' in strong. I'm lettin' you know. You could tell them that shit.

Patino Cert. Ex. I; audio recording submitted to the Court.

In light of the harassment complaints, Little's conduct at the February 21, 2008 meeting, and his voicemail message, the hotel terminated Little on February 26, 2008. Surrey cited its associate code of conduct, stating that "'Behavior that creates an intimidating, hostile, offensive, or inappropriate verbal or physical behavior' will not be tolerated." Patino Cert. Ex. I.

\*     \*     \*

On August 31, 2009, Little filed this action in the Superior Court of New Jersey, Essex County against Surrey, Ansomah, Hilton Hospitality Inc., and various fictitiously named persons and entities. In the complaint[2] he alleges that he suffered sexual harassment by Ansomah, which created a hostile work environment. Compl. ¶ 4. Little alleges that despite reporting this conduct to his superiors, he continued to suffer from unwelcome sexual advances from

---

[2] The complaint is the only document before the Court submitted by plaintiff.

**NOT FOR PUBLICATION**

Ansomah. Compl. ¶ 5. Little also alleges that rather than provide assistance dealing with the hostile work environment, the defendants terminated him based on the pretext that he had a dispute with a fellow employee. Compl. ¶ 7. Little alleges that the defendants' actions violated the New Jersey Law Against Discrimination ("NJLAD"). Compl. ¶ 8. As result of the defendants' actions, Little alleges that he suffered emotional distress requiring medical treatment. Compl. ¶ 9. Little seeks reinstatement with back pay, compensatory damages for lost income, compensatory damages for pain and suffering and emotional distress, punitive damages, and attorneys fees and costs. Compl. ¶ 9.

Defendant Surrey was served via mail on September 14, 2009. Notice of Removal ¶ 2. On October 12, 2009 Surrey[3] filed an unopposed notice of removal based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441(a) and now moves for summary judgment.

## JURISDICTION

Before addressing the merits of Surrey's motion, the Court must first examine its jurisdiction to hear this case. Jurisdiction here is premised on diversity. However, (1) both the plaintiff and one of the defendants, Ansomah, are citizens of the same state, and (2) the complaint provides fictitious names for several defendants. As explained later, the Court concludes that Ansomah and the fictitiously named defendants were fraudulently joined and their citizenship may be disregarded for purposes of diversity jurisdiction.

**A. Joinder of Doris Ansomah**

---

[3] There is no indication in the record that any defendant other than Surrey was served in this matter and Surrey is the only defendant that has appeared; therefore, the unanimity normally required among removing defendants is not required in this case. *See Granovsky v. Pfizer, Inc.*, 631 F. Supp. 2d 554, 559 (D.N.J. 2009) (Walls, J.). Additionally, the unanimity rule may be disregarded as to the fictitious defendants. *See Balazik v. County of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995) ("The unanimity rule may be disregarded where: (1) a non-joining defendant is an unknown or nominal party . . . .").

**NOT FOR PUBLICATION**

Federal courts have limited jurisdiction and at the outset of any case a court must determine whether it has subject matter jurisdiction. A district court "may and should always determine *sua sponte* whether its subject-matter jurisdiction has been properly invoked by a removal petitioner." *Berckman v. United Parcel Serv.*, Civ. No. 07-5245, 2007 WL 4080372, at *1 (D.N.J. Nov. 14, 2007) (citation omitted); s*ee also Medlin v. Boeing Vertol Co.*, 620 F.2d 957, 960 (3d Cir. 1980) ("failure to challenge removal cannot confer subject matter jurisdiction which it does not otherwise possess upon the federal district court" (citation omitted)). Where it appears that a court lacks subject matter jurisdiction over a removed case, the court shall remand it to state court. 28 U.S.C. § 1447(c).

In this case, the sole basis for removal and subject matter jurisdiction is diversity of citizenship. *See* 28 U.S.C. §§ 1332 and 1441(a). The plaintiff is a New Jersey citizen. Defendant Surrey is a Delaware corporation, with a principal place of business in Texas. Defendant Hilton Hospitality Inc. (which Surrey claims is an improperly named party), is or was a Nevada corporation with a principal place of business in California. Finally, defendant Ansomah is a New Jersey citizen.

Normally, Ansomah's presence as a defendant in this case would defeat the complete diversity required for federal jurisdiction as both she and the plaintiff are citizens of New Jersey. However, Surrey argues that Ansomah has been fraudulently joined and her citizenship should be disregarded for purposes of establishing diversity jurisdiction. If Ansomah's citizenship is disregarded under the fraudulent joinder rule, then the case was properly removed and this court has subject matter jurisdiction. If not, diversity is defeated and the case must be remanded.[4]

---

[4] Although fraudulent joinder determinations are often made in the context of a remand motion, there is no requirement that this be so given the Court's authority to determine its own jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) and 28 U.S.C. § 1447(c).

**NOT FOR PUBLICATION**

To show that Ansomah was fraudulently joined, and that her citizenship should be disregarded, Surrey must demonstrate that the claims against her are "wholly insubstantial and frivolous." *In re Briscoe*, 448 F.3d 201, 218 (3d Cir. 2006) (citation omitted). To do this, Surrey must show that "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Id.* at 217 (citation omitted).

Establishing fraudulent joinder is no easy task, "the removing party carries a heavy burden of persuasion," and "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) (citations and quotation marks omitted).

The "standard used to determine whether a claim is 'colorable' for purposes of determining whether a defendant was fraudulently joined is significantly more forgiving than that used to decide a motion to dismiss." *Freichs v. Lifestar Response Corp.*, Civ. No. 09-4460, 2009 WL 3754190, at *2 (Nov. 5, 2009) (citing *In re Briscoe*, 448 F.3d at 218). A district court does not conduct the same "penetrating" legal inquiry normally used for a regular motion to dismiss and must be careful not to "convert[] its jurisdictional inquiry into a motion to dismiss." *Batoff*, 977 F.2d at 852; *see also id.* at 853 ("A claim which can be dismissed only after an intricate analysis of state law is not wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.").

When evaluating fraudulent joinder, the Court "must focus on the plaintiff's complaint at the time the petition for removal was filed" and "must assume as true all factual allegations of the complaint." *Id.* at 851 (citation omitted). Any "uncertainties as to the current state of

controlling substantive law," must be resolved "in favor of the plaintiff." *Id.* at 852 (citation omitted). While a court "can look to more than just the pleading allegations to identify indicia of fraudulent joinder," it "must not step 'from the threshold jurisdictional issue into decision on the merits.'" *In re Briscoe*, 448 F.3d at 219 (quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990)).

Surrey makes two arguments in urging that Ansomah was fraudulently joined and that her citizenship should be disregarded: first, that Ansomah cannot be held primarily liable for her actions under the New Jersey Law Against Discrimination ("NJLAD") because the relevant portion of the law only applies to an "employer" and the complaint states that Ansomah is a "fellow employee." *See* N.J. Stat. Ann. § 10:5-12(a). Second, Surrey argues that while individuals may be secondarily liable under the NJLAD when they "aid or abet" a violation of the NJLAD, *see id.* § 10:5-12(e), the plaintiff has not pled any claim under that section, nor indicated that Ansomah aided or abetted a violation of the NJLAD. Also, Surrey argues, it is well-settled that non-supervisory employees have no liability at all under the NJLAD. And since the complaint only alleges that Ansomah is a "fellow employee" and not a supervisor, she cannot be held liable under the NJLAD.

Though the complaint is sparse, the Court can discern three claims that might arise against Ansomah under the New Jersey Law Against Discrimination: (1) hostile work environment sexual harassment, Compl. ¶¶ 4-5; N.J. Stat. Ann. § 10:5-12(a); *see Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 600-03 (1993); (2) retaliatory discharge, Compl. ¶ 7; N.J. Stat. Ann. § 10:5-12(d); and (3) aiding and abetting violations of the NJLAD, N.J. Stat. Ann. § 10:5-12(e) (aiding and abetting is not specifically pled in the complaint), *see Freichs*, 2009 WL 3754190, at *3 (concluding that although "aiding and abetting" was not specifically pled, the

complaint sufficiently indicated that the non-diverse defendant played a role in her termination and therefore was properly joined); *accord Agyabeng v. Kmart Corp.*, Civ. No. 09-730, 2009 WL 2151904, at *3 (D.N.J. June 14, 2009).

Turning first to the hostile work environment sexual harassment claim, the Court agrees with Surrey that Little does not have a colorable basis for filing this claim against Ansomah. The NJLAD expressly limits primary liability for these claims to "an employer." N.J. Stat. Ann. § 10:5-12(a). Little's complaint states that Ansomah was his "fellow employee" and that he was employed by the hotel. It would not be possible for a court to conclude that these provisions apply to Ansomah because Little does not allege that she was his employer.

Next is the retaliatory discharge claim. The NJLAD prohibits "any person" from taking "reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by this act." *Id.* § 10:5-12(d). Here, it would also not be possible for a state court to conclude that Ansomah is liable—Little does not anywhere in his complaint allege that Ansomah took any reprisals against him or otherwise coerced, intimidated, threatened or interfered with his rights under the act. Additionally, Little specifically excludes Ansomah as the actor in his alleged retaliatory discharge, stating, instead that the hotel and its management company were responsible for terminating him. *See* Compl. ¶ 7.

As for a potential aiding and abetting claim, in *Hurley v. Atlantic City Police Dept.*, the Third Circuit predicted that "under New Jersey law, a nonsupervisory employee cannot be held liable as an aider and abettor for his own affirmative acts of harassment" because it is the


**NOT FOR PUBLICATION**

"nonsupervisory employee's harassment [that] takes advantage of the employer's wrongful conduct . . . ." *Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 129 (3d Cir. 1999). Accordingly, assertion of a claim of aiding and abetting against Ansomah for her own wrongful conduct would be "wholly insubstantial and frivolous." *In re Briscoe*, 448 F.3d at 218.

This Court concludes that joinder of Ansomah was fraudulent and that her citizenship should be disregarded for purposes of establishing diversity jurisdiction.

### B. Joinder of the Fictitiously Named Defendants

Although neither party raises the issue, the Court is compelled to address the complaint's fictitiously named defendants, specifically "John Doe," "Richard Roe," and "ABC Corp." In *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26 (3d Cir. 1985), the Third Circuit addressed the issue of the effect of fictitiously named defendants on diversity jurisdiction. After noting that in determining whether diversity jurisdiction exists, "the citizenship of purely 'nominal' parties may be disregarded," the court applied a two-step analysis derived from *Pullman Company v. Jenkins*, 305 U.S. 534, 537, 540 (1939). *Abels*, 770 F.2d at 29. First, a court must examine "whether, on the face of the complaint, there are sufficient allegations concerning their identity and conduct to justify consideration of their citizenship." *Abels*, 770 F.2d at 29. Second, a court "must look beyond the face of the complaint for indicia of fraudulent joinder." *Id.*

In the first step, courts look for "some clue who the Doe might be, how the Doe might fit into the charging allegations, or how the Doe might relate to other parties." *Id.* at 30 (citation omitted). "The purpose of this inquiry is to determine whether the Does, though unnamed, are 'real', or whether they are 'shams' that have been inserted into the complaint out of 'superstition' rather than any actual hope of obtaining a judgment." *Id.* (citation omitted).

9

**NOT FOR PUBLICATION**

With regard to the fictitiously named defendants, Little goes beyond "merely includ[ing] Does in the caption, without any charging allegations." *Id.* (citation omitted). The complaint specifically charges that, *inter alia*, "ABC Corp." acting through its "agents, servants or employees John Doe and Richard Roe . . . terminated plaintiff" based on pretext. Compl. ¶ 7. Here, "the allegations against the fictitious defendants not only state a potential cause of action against the Does, but they specifically identify the relationship between plaintiff, [the named defendant] and the particular unnamed parties." *Id.* at 31 (citations omitted).

Second, as noted earlier, courts may conclude that a defendant was fraudulently joined not only when "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant," but also when there is "no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *In re Briscoe*, 448 F.3d at 217 (citation and quotation marks omitted). Accordingly, "courts have found fraudulent joinder where plaintiffs failed to move to compel discovery that would permit identification of Doe defendants." *Abels*, 770 F.2d at 32.

The plaintiff's conduct in this case is inconsistent with an intention to actually proceed against the fictitiously named defendants. *Cf. id.* Since filing the complaint, it appears that the plaintiff has done little else. There is no indication that the plaintiff sought through discovery to identify those employees involved with his termination. Nor has plaintiff filed a motion to amend the complaint to substitute identified Doe defendants. Plaintiff's actions indicate no subjective intent to proceed against the Doe defendants.

This Court concludes that joinder of the fictitiously named defendants was fraudulent and that their citizenship may be disregarded for purposes of establishing diversity jurisdiction.

**NOT FOR PUBLICATION**

Because the citizenship of Ansomah and the fictitiously named defendants will be disregarded for purposes of establishing diversity jurisdiction, this Court has subject matter jurisdiction and now focuses on the merits of Surrey's summary judgment motion.

## STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *See id.* at 248. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, a non-movant must present more than a mere scintilla of evidence in his favor. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for

trial.  *See Anderson*, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002).

## DISCUSSION

In his complaint, plaintiff appears to make two claims under the New Jersey Law Against Discrimination: (1) that he was subject to sexual harassment that created a hostile work environment; and (2) a retaliation claim—that his employer terminated his employment because he reported the harassment.

### A.  Surrey's Liability for Hostile Work Environment Sexual Harassment

The New Jersey Law Against Discrimination makes it unlawful for an employer to discriminate "in compensation or in terms, conditions or privileges of employment" against any individual on the basis of sex.  N.J. Stat. Ann. § 10:5-12(a).  In *Lehmann v. Toys 'R' Us, Inc.*, the New Jersey Supreme Court recognized that "sexual harassment is a form of sex discrimination" that violates the NJLAD.  *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 601 (1993) (citations omitted).  The court concluded that to establish a claim for hostile work environment sexual harassment, one "must allege conduct that occurred because of [his] sex . . . that a reasonable [man] would consider sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile, or offensive working environment."  *Lehmann*, 132 N.J. at 603.

Here, in arguing that it is entitled to summary judgment on Little's sexual harassment claim, Surrey focuses entirely on the issue of its liability for the actions of Doris Ansomah, apparently conceding, at least for purposes of this motion, that the elements recited above are satisfied.  Accordingly, the Court need not address any questions relating to the severity or

pervasiveness of the harassment alleged or whether the alleged harassment occurred because of Little's sex and instead focuses on Surrey's liability for Ansomah's conduct. *Cf. Mancuso v. City of Atlantic City*, 193 F. Supp. 2d 789, 796-97 (D.N.J. 2002).

When determining whether an employer should be held liable for sexual harassment perpetrated by one of its nonsupervisory employees, the New Jersey Supreme Court has directed that courts should look to whether an employer knew or should have known of the harassment and failed to take effective measures to stop it. *Lehmann*, 132 N.J. at 623. "Effective" remedial measures are those "reasonably calculated to end the harassment. The reasonableness of an employer's remedy will depend on its ability to stop harassment by the person who engaged in harassment." *Id.* (citations and quotation marks omitted).[5] If an employer has "exercised due care in acting to prevent a sexually discriminatory hostile work environment, vicarious liability should not attach. The establishment of an effective anti-sexual harassment workplace policy and complaint mechanism evidences an employer's due care and may provide affirmative protection from vicarious liability." *Gaines v. Bellino*, 173 N.J. 301, 303 (2002). A company that "develops policies reflecting a lack of tolerance for harassment will have less concern about hostile work environment or punitive damages claims if its good-faith attempts include periodic publication to workers of the employer's anti-harassment policy; an effective and practical grievance process; and training sessions for workers, supervisors, and managers about how to recognize and eradicate unlawful harassment." *Cavuoti v. N.J. Transit Corp.*, 161 N.J. 107, 121 (1999) (examining basis for imposing punitive damages in sexual harassment cases).

---

[5] While *Lehmann* examined sexual harassment in the context of conduct by supervisory employees, this standard also applies when nonsupervisory employees engage in the challenged conduct. *See, e.g.*, *Heitzman v. Monmouth County*, 321 N.J. Super. 133, 144-46 (App. Div. 1999), *overruled on other grounds*, *Cutler v. Dorn*, 196 N.J. 419, 440 (N.J. 2008) ("When a coworker engages in harassing conduct, the employer is liable only if management-level employees knew, or in the exercise of reasonable care should have known, about the campaign of harassment.") (citations and quotation marks omitted); *see also Blakey v. Continental Airlines, Inc.*, 164 N.J. 38 (2000) (employer may be held liable for alleged hostile environment created by co-employees if, *inter alia*, it is on notice).

**NOT FOR PUBLICATION**

Here, there is insufficient evidence for a reasonable juror to conclude that Surrey should be held liable for Ansomah's conduct. The evidence, which Little does not dispute, shows that Surrey took adequate and effective preventive and remedial measures: it promulgated a non-harassment policy; performed an investigation as soon as Little complained about the harassment; and remedied the harassment by terminating Ansomah's employment a little over one week later. In fact, when asked at his deposition if there were additional incidents with Ansomah following his complaint, Little responded, "No." Little Dep. 53:24-54:5, Apr. 26, 2010, DiMaria Cert. Ex. B. Defendant's motion for summary judgement for plaintiff's hostile work environment sexual harassment claim is granted.

### B. Little's Retaliation Claim

Little alleges in his complaint that rather than provide him with "assistance in dealing with the hostile work environment," Surrey terminated him based on "the pretext that he had a dispute with a fellow employee." Compl. ¶ 7.

Under the NJLAD it is an unlawful employment practice to take reprisals against any person because he (1) has opposed any practices or acts outlawed by the NJLAD or (2) has filed a complaint, testified, or assisted in any proceeding under the NJLAD. N.J. Stat. Ann. § 10:5-12(d).

"A plaintiff may establish a *prima facie* case in a claim of retaliatory discharge by demonstrating that: (1) he engaged in a protected activity known to the employer, (2) he was subjected to adverse employment action by the employer, and (3) there was a causal link between the protected activity and the adverse employment action." *Rogers v. Alternative Resources Corp.*, 440 F. Supp. 2d 366, 376 (D.N.J. 2006) (citations omitted).

**NOT FOR PUBLICATION**

Here, Little is only able to establish prongs one and two. He engaged in protected activity—complaining of sexual harassment to human resources; and he was subject to an adverse employment action when he was terminated.

However, Little cannot satisfy the third prong because he has not demonstrated a causal link between his sexual harassment complaint and his termination. There is no temporal proximity between the protected activity and the adverse employment action. *See Rogers*, 440 F. Supp. 2d at 376. Little complained of sexual harassment in September 2007 and was not terminated until February 2008. Without more, the passage of five months between the protected activity and the adverse employment action is insufficient to support an inference that the former caused the latter. *See Colson v. Cablevision MFR, Inc.*, Civ. No. 05-cv-5639, 2008 WL 687257, at *6 n.13 (D.N.J. Mar. 11, 2008) ("Courts generally hold that if at least four months pass after the protected action without employer reprisal, no inference of causation is created.")

A plaintiff may also establish causation, even where there is a lack of temporal proximity, with "circumstantial evidence of a pattern of antagonism following the protected conduct or other evidence such as inconsistent reasons for termination, evidence casting doubt on reasons proffered for termination, and a change in demeanor after a complaint of discrimination." *Rogers*, 440 F. Supp. 2d at 377 (citations and quotation marks omitted).

Little has not presented evidence to establish a pattern of antagonism, nor does the record otherwise raise the inference that his filing of the complaint was the likely reason for his termination. Little's alleged harasser was terminated and there is no indication in the record that his complaint was considered in his termination. Instead, Surrey considered the pattern of disruptive conduct that his coworkers complained of and his threatening voicemail message in its decision to terminate him.

**NOT FOR PUBLICATION**

Alternatively, even if the Court accepts that Little has demonstrated causation by showing a pattern of antagonism after the filing of his complaint, Little cannot establish that Surrey's proffered legitimate, non-discriminatory reason for his termination is pretextual. *See Young v. Hobart West Group*, 385 N.J. Super. 448, 465 (App. Div. 2005) (citations omitted) (Once a plaintiff establishes a prima facie case of retaliation, the defendants must "articulate a legitimate, non-retaliatory reason for the decision." Next, "the plaintiff must come forward with evidence of a discriminatory motive of the employer, and demonstrate that the legitimate reason was merely a pretext for the underlying discriminatory motive.")

Surrey maintains that it terminated Little based on his conduct at the February 21 meeting, his voicemail message to Tavares, and in light of the complaints of intimidating and threatening behavior. Pl.'s Br. 11. Other than a conclusory assertion in his complaint, Little has not disputed Surrey's stated reason for his termination. When asked at his deposition why he thought he was terminated, Little responded:

> A: I believe I was terminated because of the—maybe the threat.
>
> Q: What do you mean? What threat?
>
> A: They said that it was a threat by calling Dina on the phone.
>
> Q: So that's why you believe you were terminated?
>
> A: Yup.
>
> Q: Any other reason why you think were terminated?
>
> A: I don't know. I really don't know.

Little Dep. 96:23-97:10, Apr. 26, 2010, DiMaria Cert. Ex. B.

As there is no evidence in the record to support plaintiff's assertion that his termination was retaliatory instead of his demonstrated harassing and threatening behaviour towards his fellow employees, summary judgment is granted to defendant Surrey on the retaliation claim.

## CONCLUSION

Surrey's motion for summary judgement is GRANTED and the complaint is DISMISSED with prejudice.

September 28, 2010

<div style="text-align:right">

**s/ William H. Walls**
United States Senior District Judge

</div>